# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 04-2511

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

T'ANGELO L. LOCKWOOD,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 03 CR 114—**Allen Sharp**, *Judge.*

_____

ARGUED JUNE 10, 2005—DECIDED JULY 26, 2005

_____

Before FLAUM, *Chief Judge*, and POSNER and KANNE,
*Circuit Judges.*

KANNE, *Circuit Judge.* In November 2003, a grand jury
returned an indictment charging T'Angelo Lockwood with
one count of being a felon in possession of a firearm, in
violation of 18 U.S.C. § 922(g)(1). Lockwood pleaded guilty
pursuant to a written plea agreement. Under the terms of
the agreement, Lockwood admitted that on or about
December 10, 2002, he knowingly possessed a firearm after
having previously been convicted of a felony in 1999.
Lockwood acknowledged that the statutory maximum pen-

alty he faced was ten years' imprisonment and that the district court would determine his sentence after making findings pursuant to the Sentencing Guidelines. Finally, Lockwood agreed to waive his right to appeal his sentence or the manner in which it was determined in any post-conviction proceeding.[1]

The government agreed that a sentence equal to the minimum term of imprisonment under the applicable sentencing guideline range would be appropriate. The government also agreed that in recognition of Lockwood's acceptance of responsibility for his criminal conduct, he should be entitled to the maximum reduction in the offense level under the Guidelines.

After Lockwood's guilty plea, the probation office prepared its presentence report. The report determined that Lockwood's prior conviction in 1999 was for a crime of violence. Pursuant to the terms of the plea agreement, Lock-

---

[1]  Lockwood's plea agreement reads in relevant part:

> 8. I understand, also, that if I plead GUILTY, I waive the right to trial by jury. . . .
>
> * * * *
>
> 9(j). I understand that the offense to which I am pleading guilty falls under the Sentencing Guidelines. . . . I am aware that my sentence will be determined in accordance with the United States Sentencing Guidelines and this plea agreement. I agree that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for my offense(s) . . . . I expressly waive my right to appeal my conviction and sentence to any Court on **any** ground. I also agree not to contest my conviction, sentence, or the manner in which my conviction and sentence was determined on any ground in any appeal . . . or in **any** post-conviction proceeding. . . .

(Gov't App. at 2, 4 (capitalization and emphasis in original).)

wood qualified for a two-level decrease under U.S.S.G. § 3E1.1(a), and the government moved for an additional one-level decrease in accordance with § 3E1.1(b). Overall, the report determined that Lockwood's base offense level should be 20.

It was not long before Lockwood had second thoughts about the plea agreement. The government objected to the presentence report and asserted that a four-level enhancement would be appropriate pursuant to U.S.S.G. §2K2.1(b)(5), because Lockwood possessed the weapon in connection with another felony offense—possession with intent to distribute crack cocaine, to be precise. The probation officer believed, however, that the facts did not support the enhancement. And Lockwood objected to the government's proposed enhancement because the government never mentioned during the plea negotiations that it was considering that enhancement. The government responded that the facts supporting the enhancement were submitted to Lockwood and his attorney prior to plea negotiations, so the enhancement was fair game.

On May 28, 2004, at the sentencing hearing, the district judge unambiguously expressed his reluctance to sentence Lockwood in accordance with the plea agreement and the calculated guideline range. The judge declared the factual support for the government's proposed enhancement to be a "close call," but grudgingly agreed that it was more likely than not that Lockwood possessed the firearm in connection with drug dealing, qualifying Lockwood (as the government argued) for the four-level enhancement and making his subtotal offense a 24.

The judge also expressed concern with the federal sentencing "process," but summarized the various factors present in Lockwood's case and determined his final offense level to be 21 and criminal history category IV. This made Lockwood's applicable range of imprisonment 57-71 months

under the guidelines. The judge noted that, pursuant to the agreement, the government recommended a reduction for acceptance of responsibility and a sentence at the low end of the guideline range. The judge acknowledged that he would follow the recommendations.

The judge then invited Lockwood to address the court. Among other things, Lockwood denied that he possessed the cocaine and reiterated that the government "took [him] by surprise" by not mentioning the drug allegation until after he pleaded guilty. The judge reiterated his concerns with the sentence facing Lockwood and with the sentencing guidelines, stating:

> I am seriously considering granting [Lockwood] a special leave to appeal this case. I would love to see this issue presented to the Court of Appeals, frankly. I know the government—I know what [Lockwood] agreed to; I know what [Lockwood] waived, but in this case it just—I'm not mad at anybody . . . and I'm thinking about that. I am not doing it yet, but I am thinking about it.

Lockwood's attorney renewed his objection to the drugs enhancement and expressed the hope that the judge grant a "dispensation" to appeal. The judge responded:

> I don't know that I can [grant special leave to appeal]. I don't want to incur the wrath of the U.S. attorney. It just feels like the right thing to do here, to tell you the truth. * * * It wouldn't be the first or last time that I have been reversed, but this one is just troublesome to me. * * * I do believe very strongly that I have the authority to grant a special leave to appeal here. . . .

The judge allowed the prosecutor to respond regarding the enhancement, after which the judge announced Lockwood's sentence: 57 months' confinement, two years of supervised release, and a $100 special assessment. The

judge also granted Lockwood special leave to appeal, despite Lockwood's affirmative waiver of that right.

Lockwood took up the district judge's offer and now argues on appeal that he is entitled to resentencing because the judge sentenced him on the basis of judge-found facts in violation of the Sixth Amendment. This argument, of course, rests on the Supreme Court's pronouncements in *United States v. Booker*, 125 S. Ct. 738 (2005), decided after Lockwood was sentenced. At argument, Lockwood requested a *Paladino* limited remand so that the district judge could answer whether he would have given Lockwood the same sentence had he known the sentencing guidelines were advisory rather than mandatory. *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005). Much of the parties' arguments concerned whether the district judge rejected Lockwood's plea agreement in whole or in part, so Lockwood may also be seeking to have his sentence vacated and his case remanded for full resentencing. This distinction is irrelevant to the outcome of this case, for the reasons discussed below.

The government argues that we need not reach Lockwood's *Booker* arguments and should simply dismiss his appeal. As the government sees it, Lockwood knowingly and intentionally waived his right to appeal his sentence or the manner in which it was imposed pursuant to the plea agreement, which Lockwood concedes was valid and binding. Under simple contract principles and related caselaw, Lockwood cannot renege on his plea deal and therefore has no right to appeal his sentence. The government also takes issue with the fact that the district judge seemingly accepted the plea agreement, and sentenced Lockwood according to its terms, which meant that the entire agreement was binding and the judge could not pick and choose certain portions (e.g., the appellate waiver) to set aside.

We will first consider the actions of the district court. There is no question that the district court expressed reluctance to enhance Lockwood's sentence and to sentence him in accordance with the plea agreement and the guidelines. There is some debate, however, whether the district judge may have rejected the entire plea agreement or the portion containing Lockwood's appeal waiver. The Federal Rules of Criminal Procedure allow a district judge to reject plea agreements in their entirety. Fed. R. Crim. P. 11(c)(5). If a judge does so, Rule 11 requires that the judge make clear the rejection and openly advise the defendant that he may withdraw his guilty plea. *Id.* The judge did not do either in this case. As dissatisfied as the judge may have been with the plea agreement, we conclude that the judge accepted the plea agreement when he sentenced Lockwood in accordance with its provisions (albeit reluctantly).

We agree with Lockwood that the district judge's statements and actions could fairly be interpreted as a rejection of a portion of the plea agreement—specifically, paragraph 9(j), the provision containing Lockwood's appeal waiver. Rule 11 does not, however, allow for piecemeal acceptance of some portions of the plea agreement, but not others. For example, Rule 11(c)(1)(C) indicates types of agreed recommendations that do or do not bind the court once the agreement is accepted. In this case, the court recited those recommendations, declared them "honored," and sentenced Lockwood accordingly. As discussed, the judge certainly acted in a manner consistent with his being bound by the agreement, and not even Lockwood disputes this.

Even if we assume that the judge intended to reject only the appeal waiver, Rule 11 does not authorize this form of departure from the agreement once accepted by the court. If the judge did not want to accept Lockwood's plea agreement or any portion thereof, he should have rejected the whole thing, and the government and Lockwood would have been back at square one. Instead, he sentenced Lockwood

consistent with the provisions of the plea agreement and, at the conclusion of sentencing, granted Lockwood special leave to appeal his sentence. In essence, the judge accepted the agreement but *sua sponte* rescinded one of its provisions—the one pertaining to Lockwood's appeal waiver. We agree with the government that Rule 11 does not allow for such an approach, so the district court was in error when he granted Lockwood special leave to appeal.

This brings us to Lockwood's suggestion that his appeal waiver is invalid because the parties and the court failed to anticipate *Booker*. Because plea agreements are basically contracts, we have evaluated their validity and enforceability under principles of contract law. *See United States v. Cook*, 406 F.3d 485, 487-88 (7th Cir. 2005); *United States v. Bownes*, 405 F.3d 634, 636 (7th Cir. 2005). More to the point, it is well established that a defendant's appeal waiver is enforceable if made knowingly and voluntarily. *See, e.g., United States v. Williams*, 184 F.3d 666, 668 (7th Cir. 1999); *United States v. Wenger*, 58 F.3d 280, 282 (7th Cir. 1995); *accord United States v. Andis*, 333 F.3d 886, 889-90 (8th Cir. 2003) (en banc).

Lockwood does not dispute that he knowingly and intelligently waived his right to appeal as part of his plea agreement. He instead claims that his appeal waiver is "null and void" because his sentence exceeded the statutory maximum on the basis of facts found by the district judge in violation of *Booker*. This, Lockwood claims, was a "fundamental error" of the sort that may resurrect his right to appeal, *see, e.g., United States v. Ogden*, 102 F.3d 887, 889 (7th Cir. 1996), or at least entitles him to a limited remand pursuant to *Paladino*, which the government concedes is the proper remedy if we conclude that Lockwood's appeal should not be dismissed.

Lockwood is out of luck, however. Although it is clear the district judge sentenced Lockwood in part on the basis of facts not found by a jury beyond a reasonable doubt, it is

equally clear that Lockwood knowingly and intentionally waived his right to appeal his sentence for *any reason*. "Any reason" captures a great deal, including later changes in law that might favor Lockwood, so even a broadly worded appeal waiver like Lockwood's remains effective absent a contractual provision in the plea agreement stating otherwise. *See Bownes*, 405 F.3d at 636 (collecting authority). The fact that Lockwood, the government, and the district court failed to anticipate *Booker* or its sweeping effect on federal guidelines sentencing does not change this conclusion. *See United States v. Roche*, No. 04-1475, 2005 WL 1618816, at *2 (7th Cir. July 11, 2005). There simply is nothing special about *Booker* that would preclude enforcement of an otherwise valid appeal waiver. *See Bownes*, 405 F.3d at 637 (rejecting the view that "*Booker* is special because it brought about a 'sea change' in the law"); *Roche*, 2005 WL 1618816, at *2. We note that most of our sister circuits have held likewise. *See, e.g.*, *United States v. Reeves*, 410 F.3d 1031, 1034 (8th Cir. 2005) ("Unless expressly reserved . . . , the right to appellate relief under *Booker* is among the rights waived by a valid appeal waiver, even if the parties did not anticipate the *Blakely/Booker* rulings.") (quotation omitted) (collecting authority); *United States v. Blick*, 408 F.3d 162, 170 (4th Cir. 2005) (collecting authority); *United States v. Bradley*, 400 F.3d 459, 463-66 (6th Cir. 2005).

This is not to say that appeal waivers or plea agreements are forever set in stone. We have recognized several sentencing situations under which the broad enforcement of such waivers may be limited. These include, for example, sentences based on constitutionally impermissible criteria (such as race), sentences exceeding the statutory maximum, or ineffective assistance of counsel. *See Bownes*, 405 F.3d at 637 (collecting authority); *see also Cook*, 406 F.3d at 487; *Andis*, 333 F.3d at 891-92. As best we can tell from the record, none of these circumstances is present here, nor does Lockwood present any argument to the contrary.

In sum, as Lockwood concedes, his appeal waiver was valid and binding. *Booker* does not change the enforceability of this waiver and is not applicable in Lockwood's case; therefore, a limited remand under *Paladino* would not be appropriate here. Lockwood's appeal is DISMISSED.

A true Copy:

       Teste:

                           _____
                           ***Clerk of the United States Court of Appeals for the Seventh Circuit***

USCA-02-C-0072—7-26-05