# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-1475

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

DEVON ROCHE,

*Defendant-Appellant.*

———————

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:02 CR 72—**James T. Moody**, *Judge*.

———————

ARGUED APRIL 5, 2005—DECIDED JULY 11, 2005

———————

Before POSNER, EASTERBROOK, and EVANS, *Circuit
Judges*.

EASTERBROOK, *Circuit Judge*. Devon Roche sold ecstasy
to Derrick Perkins three times during the summer of 2000.
Before each sale, Roche called Perkins to discuss logistics.
That is, Roche thrice used a telecommunications device to
facilitate the distribution of a controlled substance, in viola-
tion of 21 U.S.C. §843(b). As it turned out, Roche's in-
volvement in the ecstasy trade went well beyond these
transactions. Between 1998 and 2000, Roche led a group
that smuggled more than 120,000 tablets of ecstasy from
Amsterdam to Chicago. The prosecutor offered to dismiss

charges related to this conduct if Roche would plead guilty to the three facilitation counts. See Fed. R. Crim. P. 11(c)(1)(A). Roche accepted.

As part of the deal, Roche agreed to a limited waiver of his right to appeal:

> I agree that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for my offense as set forth above in paragraph 9.c. of this plea agreement. With that understanding, I expressly waive my right to appeal my sentence, including any appeal right conferred by Title 18, United States Code, Section 3742, on any ground other than the following:
>
> > (1) I reserve my right to appeal the district court's determination of relevant conduct pursuant to application of guideline section 1B1.3;
> >
> > (2) I reserve my right to appeal the total weight of the Ecstasy;
> >
> > (3) I reserve my right to appeal any enhancement for an aggravating role under guideline section 3B1.1; and
> >
> > (4) I reserve my right to appeal any upward departure from my offense level.

Roche raises three of these reserved issues, arguing that the district judge's relevant conduct, drug weight, and aggravating role findings were erroneous. He also contends that the judge erred in two further respects: sentencing him based on facts not found by a jury beyond a reasonable doubt, and declining to award him an acceptance-of-responsibility adjustment under U.S.S.G. §3E1.1.

Reserving the right to appeal some issues does not entitle a defendant to appeal others. See *United States v. Whitlow*, 287 F.3d 638 (7th Cir. 2002). Roche contends that the right

to challenge the *results* of the district judge's fact- finding inquiry includes the right to challenge the judge's *power* to find those facts after *United States v. Booker*, 125 S. Ct. 738 (2005), but *Booker* affects the discretion that district judges enjoy, not their fact-finding powers. See *United States v. Lee*, 399 F.3d 864, 866 (7th Cir. 2005). Having waived his sixth amendment rights by pleading guilty, Roche cannot claim now that the judge blocked access to the jury. Cf. *United States v. Lewis*, 405 F.3d 511, 513 (7th Cir. 2005).

The judge did err in thinking himself bound by the Guidelines range. Although a generic guilty plea does not preclude a contention that the Guidelines are advisory, Roche has waived such an argument. The parties agreed that Roche's sentence would be determined "in accordance with the United States Sentencing Guidelines." This may be sufficient to trigger the rule that a defendant may not challenge on appeal a punishment to which he agrees. See *United States v. Porretta*, 116 F.3d 296, 300-01 (7th Cir. 1997); *United States v. Nguyen*, 46 F.3d 781, 783 (8th Cir. 1995). We need not decide, because Roche has surrendered his right to raise the question in *this* court. Roche waived the right to appeal "on any ground" other than those specified. The agreement permits Roche to contest the judge's factual conclusions but not the application of the Guidelines to the facts as found; fact and law are different "grounds" of decision. Cf. *United States v. Grimard-Henry*, 399 F.3d 1294 (11th Cir. 2005).

The parties did not foresee *Booker*, but that does not alter the effect of the plea bargain. The agreement provides that all arguments other than the listed four would be presented to one Article III judge instead of four; to get the substantial benefit offered by the prosecutor, Roche waived the right to challenge his sentence on any other basis, foreseen or not. As we explained in *United States v. Bownes*, 405 F.3d 634 (7th Cir. 2005), there is nothing special about *Booker* that precludes enforcement of a waiver. See also

*United States v. Blick*, 408 F.3d 162, 170 (4th Cir. 2005) (citing cases from nine circuits reaching the same conclusion).

Roche's claimed entitlement to the acceptance-of-responsibility adjustment is not worth discussing except to note that his decision to present the argument at all shows that he is unwilling to live by the plea agreement, and hence has *not* fully accepted responsibility. Making this argument, in the teeth of the agreement's unambiguous prohibition, confirms that Roche does not take his obligations seriously.

We turn to the arguments that are proper under the agreement, starting with Roche's objection to the relevant-conduct decision. The district judge declined to treat the entire smuggling operation as conduct relevant to the crimes of conviction. Recall that Roche pleaded guilty only to three counts of using a telephone to facilitate a drug transaction. The three sales occurred within four months and involved 235 tablets of ecstasy. The Guidelines provide that the offense level is based on "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred . . . in preparation for" the offenses of conviction. U.S.S.G. §1B1.3(a)(1)(B). Each of Roche's phone calls, the district judge found, was immediately preceded by the arrival in Chicago of a courier with 8,000 tablets of ecstasy. This meant that the importation of 24,000 pills was "in preparation" for the offenses of conviction. The judge also found that these pills weighed on average 250 milligrams apiece and that to produce this supply Roche had organized the activities of five or more persons. See U.S.S.G. §3B1.3.

None of these findings is clearly erroneous. The conspiracy enlisted Airrion Harvey to ferry ecstasy from Amsterdam to Chicago in the hollow soles of a pair of men's boots. (For his trouble, Harvey was paid $5,000 plus expenses for each trip.) Harvey made at least six successful trips; on trip

number seven, he was caught in Belgium with 8,200 tablets of ecstasy. Customs records and Harvey's written statement established that Harvey's arrival in Chicago preceded by two or three days each of Roche's phone calls to Perkins. Harvey also explained that Roche provided money to cover travel expenses and on occasion accompanied a co-conspirator to retrieve the fresh shipment from Harvey's boots. Harvey's account of the smuggling operation and Roche's role in it was corroborated by testimony from a federal agent and several of Roche's other co-conspirators.

While recognizing that hearsay is admissible at sentencing, see *Williams v. New York*, 337 U.S. 241 (1949); 18 U.S.C. §3661, Roche nonetheless relies on confrontation clause jurisprudence culminating in *Crawford v. Washington*, 541 U.S. 36 (2004), to argue that Harvey should have been subject to cross-examination on the subjects covered by his written statement. But the relevant provision at sentencing is the due process clause, not the confrontation clause; *Williams* shows that witnesses providing information to the court after guilt is established are not accusers within the meaning of the confrontation clause. Sentencing judges are entitled to use any "procedures adequate to reach informed and accurate decisions in the main". *United States v. Escobar-Mejia*, 915 F.2d 1152, 1154 (7th Cir. 1990); see also *United States v. Akin*, 29 F.3d 267 (7th Cir. 1994). The Sentencing Guidelines add that judges must limit consideration to information that has "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. §6A1.3(a). These requirements have been satisfied. Roche contends that Harvey had him mixed up with one of the other members of the conspiracy, but this is an objection to the district judge's factual conclusion and not a constitutional flaw.

Roche does point out that the pills he sold to Perkins were of a design different from those Harvey brought back from Amsterdam—Perkins purchased pink pills with hearts and purple pills with a 007 stamp, but Harvey claimed to have

smuggled white pills with a triangular design and beige pills with a Nike stamp. The prosecutor speculates that the soles of Harvey's shoes were like bags of M&Ms, filled with pink, purple, white, and beige pills all mixed together. This is not a particularly compelling argument. In at least two of the three deals (the record is silent about the third), Perkins received pills of a uniform design; if the shipments from Amsterdam were mixed, we would expect Perkins' purchases to be mixed as well. Nonetheless, Roche gives us no reason to doubt that the different pills were interchangeable. In fact, he told Perkins that the ecstasy was "straight from Amsterdam". If Nike pills and 007 pills are fungible, then it was not clear error for the district judge to decide that Perkins would not have received any ecstasy, of whatever design, but for the timely arrival of fresh stock.

Nor is there a problem with the district judge's calculation of the total weight of the 24,000 pills. The drug sold as "ecstasy" is typically one of two related compounds, MDA (methylenedioxyamphetamine) or MDMA (3-4 methylenedioxymethamphetamine). Roche dealt in MDMA. Under the 2000 Sentencing Guidelines Manual, which the parties agreed should be used, responsibility for six kilograms of MDMA results in an offense level of 26. Roche argues that the district judge's reliance on the 2002 Sentencing Guidelines Manual to estimate the pills' weight violates the ex post facto clause. It is doubtful that the ex post facto clause plays any role after *Booker*. *United States v. Seacott*, 15 F.3d 1380, 1384-86 (7th Cir. 1994), holds that the Guidelines are "laws" for constitutional purposes, but by severing those provisions that made the Guidelines mandatory the Court in *Booker* demoted the Guidelines from rules to advice. This removes the foundation of *Seacott* and similar decisions, while leaving in place the requirement that judges use the Guidelines in place at the time of sentencing. See 18 U.S.C. §3553(a)(4). We need not finally resolve this subject, however, because the district judge acted before *Booker*, and

we have held that Roche consented to applying the Guidelines as written (implying that he receives the benefit of *Seacott* and the 2000 Manual in exchange). Still, the 2002 Manual does not change to Roche's disadvantage any of the rules at issue in this appeal.

Roche contends that, instead of the 250 milligram "typical weight per unit" listed in the 2002 Manual for MDA and MDMA, the district judge should have used the 100 milligram weight the 2000 Manual lists for MDA. Yet Roche imported and sold MDMA, not MDA. The 2002 Manual does not change the way MDMA's weight is calculated. Moreover, Roche would not get anywhere on this line of argument even if he had distributed MDA. The 2000 Manual itself directs the court not to use the typical-weight table "if any more reliable estimate of the total weight is available from case-specific information." U.S.S.G. §2D1.1 Application Note 11. Ecstasy tablets recovered from another member of the conspiracy averaged 252 milligrams apiece. The pills sold to Perkins had a mean weight of 214 milligrams. Only a mean weight less than 120 milligrams per pill would place Roche below offense level 26, and no evidence in the record implies a weight in that range. Cf. *United States v. Gaines*, 7 F.3d 101, 104 (7th Cir. 1993).

A further difficulty is that the 2000 Manual estimated the MDA dosage (the controlled substance) rather than the weight of an MDA pill (the mixture). Yet even under the 2000 Manual, the defendant is responsible for the weight of the whole pill, not just the active ingredient. See §2D1.1 Drug Quantity Table Note A. See also *Neal v. United States*, 516 U.S. 284 (1996). The potential for confusion between the weight of the active ingredient and the weight of the mixture is precisely why the Sentencing Commission made the change: The old version "created the potential for misapplying the MDA estimate in a case in which MDMA is involved, which could result in underpunishment in some ecstasy cases. This part of the amendment thus promotes

uniform application of §2D1.1 for offenses involving ecstasy by adding a reference for MDMA and revising the estimated weight for MDA." Amendment 640 (2002). The clarity of the 2002 Manual does not give Roche the right to an improper application of the 2000 Manual.

Roche explained that he reserved the right to appeal these factual determinations because he was concerned the district judge would be unable to ignore the bigger picture—Roche's involvement in an international drug-smuggling ring—at sentencing. This just shows that Roche's challenge to his sentence was risky beyond the repercussions of violating the plea agreement. "[A] defendant who appeals a pre-*Booker* sentence on the basis that the guidelines were misapplied . . . is playing with fire, because if he wins and is resentenced the judge will have more sentencing latitude, up as well as down, than he did when the guidelines were deemed mandatory." *United States v. Goldberg*, 406 F.3d 891, 895 (7th Cir. 2005). The district judge conscientiously attempted to isolate conduct that was "in preparation" for the three particular transactions at issue (which may or may not have been required, see U.S.S.G. §1B1.3(a)(2); *United States v. Delatorre*, 406 F.3d 863, 866-67 (7th Cir. 2005)). If we were to remand for resentencing, the judge would not be so constrained after *Booker*. Perhaps Roche should be thankful that we have rejected his demand to be resentenced.

AFFIRMED

No. 04-1475                                                          9

**A true Copy:**

    **Teste:**

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*