# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-4631

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

WILLIE A. JOHNSON, also known as TWAN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 03 CR 20097—**Michael P. McCuskey**, *Chief Judge.*

ARGUED SEPTEMBER 26, 2006—DECIDED JUNE 4, 2007

Before EASTERBROOK, *Chief Judge,* and BAUER and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Willie A. Johnson pled guilty to the charge of conspiracy to distribute 50 or more grams of cocaine base ("crack") in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 846. Following a sentencing hearing, the district court calculated the Sentencing Guidelines range, and found that Johnson's offense level was 33, and that his criminal history category was I. The district court further found that Johnson was subject to a two-level enhancement pursuant to U.S.S.G. § 3B1.1(c), as an "organizer, leader, manager or supervisor" of the criminal activity. His advisory Guidelines range was thus

135 to 168 months. The district court then considered the factors under 18 U.S.C. § 3553(a), and imposed a sentence of 168 months. Johnson appeals, arguing that the district court improperly determined that the two-level enhancement was appropriate as an "organizer, leader, manager or supervisor."

As part of his plea of guilty, Johnson admitted that on or about January 9-10, 2002, Johnson was involved in a conspiracy in which he provided more than 50 grams of powder cocaine to be cooked into crack cocaine by Andre Enoch and transported to Macon County to be sold as crack cocaine. The Presentence Investigation Report (PSR) detailed the underlying conduct, gleaned from investigative reports prepared by the FBI, the Illinois State Police, the Decatur Police Department, and statements of cooperating individuals such as Johnson's co-conspirators David Marshall and Andre Enoch. Marshall and Enoch provided statements indicating that Johnson was the source of the cocaine and the coordinator of the operations. Moreover, Marshall cooperated with the government in recording conversations relating to drug transactions, and law enforcement officers were able to corroborate some of the information provided by Marshall through those recordings as well as through direct observations and other means. For instance, in a recorded telephone conversation on June 29th, 2001, Marshall asked Johnson to send someone to Decatur to pick up some of the money Marshall owed Johnson for a prior drug deal, and to return jet skis that had been borrowed from Marshall. Later that day, a person named "Terrel" drove to Decatur in a van registered to Johnson with the jet skis, and received $5000 from Marshall to give to Johnson as payment for the prior drug debt. Marshall told Terrel that he would meet Johnson in Chicago later in the week with the rest of the money owed. On July 3rd, Marshall met with Johnson at his home and paid the remaining

$6000. Marshall wore a body wire and was under surveillance for that meeting. Therefore, the observed events and the recordings provided support for Marshall's statements that Johnson was a source of drugs, who dispatched individuals to deliver drugs or pick up payments. Similarly, Marshall stated that on a number of occasions, Johnson's uncle, Percy Allen, transported a kilo of cocaine from Johnson to Decatur for Marshall. Allen later confirmed that on at least one occasion, he had transported a kilo of cocaine to Marshall that Marshall had purchased from Johnson.

Despite that evidence, Johnson disputed at sentencing that he was an organizer, leader, manager or supervisor of that conspiracy. Specifically, Johnson asserts that the district court's finding was clear error, because the court based its determination on unreliable evidence and failed to properly inquire into the reliability of the evidence or make explicit fact findings supporting its conclusion.

We review a district court's determination of role in the offense for clear error, and will reverse only if after reviewing all of the evidence, we are left with the definite and firm conviction that a mistake has been made. *United States v. Hankton*, 432 F.3d 779, 789 (7th Cir. 2005). Moreover, a district court in determining a sentence is not bound by the same stringent evidentiary standards as are applicable in a criminal trial. *United States v. Taylor*, 72 F.3d 533, 543 (7th Cir. 1995). Hearsay, for instance, may be considered at sentencing even if it would not have been admissible at trial, and has been characterized as an integral part of the sentencing process. *Hankton*, 432 F.3d at 790; *United States v. Badger*, 983 F.2d 1443, 1459 (7th Cir. 1993). A court at sentencing "'may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.'" *Id.*,

*quoting United States v. Harty*, 930 F.2d 1257, 1268 (7th Cir. 1991). The caveat is that the defendant has a due process right to be sentenced on the basis of reliable information. *Taylor*, 72 F.3d at 543. Accordingly, under the Guidelines the court must limit consideration to information that has "'sufficient indicia of reliability to support its probable accuracy.'" *United States v. Roche*, 415 F.3d 614, 618 (7th Cir. 2005); U.S.S.G. § 6A1.3(a).

Johnson asserts that the district court erred in relying on the Presentence Investigation Report (PSR) in finding that the enhancement was appropriate. He maintains that he had raised sufficient concerns about the reliability of the information in the PSR but that the district court failed to then make a searching inquiry into the reliability of the information as is required. In objecting to the PSR in the district court, Johnson first contended that the statements by Marshall and Enoch were unreliable because they were facing criminal charges and were attempting to better their own situations by implicating him. We have repeatedly held, however, that even the testimony of a potentially biased witness is sufficient to support a finding of fact. *United States v. Zehm*, 217 F.3d 506, 514 (7th Cir. 2000); *United States v. Galbraith*, 200 F.3d 1006, 1012 (7th Cir. 2000). In fact, the district court may credit testimony that is "totally uncorroborated and comes from an admitted liar, convicted felon, or large scale drug-dealing, paid government informant." *United States v. Romero*, 469 F.3d 1139, 1147 (7th Cir. 2006), *quoting United States v. Blalock*, 321 F.3d 686, 690 (7th Cir. 2003) *et al.* Accordingly, their status as self-interested co-conspirators does not thereby render the information inherently unreliable.

Johnson next asserts that the PSR inaccurately recounted that in a recorded conversation of January 9th, Marshall told Johnson that he wanted Johnson or Enoch

to bring him nine ounces of crack cocaine. At the sentencing hearing, the government agent testified that Marshall initially spoke with Johnson in that conversation but did not discuss the drug transaction, and then Marshall conversed with Enoch and told Enoch that he should tell "Cuz" to have Enoch bring down nine ounces of crack cocaine. The agent testified that in the context of that conversation, the term "Cuz" applied to Johnson. Marshall also indicated that Johnson avoided direct conversations or transactions regarding drugs. Although the PSR inaccurately recounts the conversation, that is irrelevant because Johnson acknowledges in his brief that "[i]t appears that the district court ultimately rejected the notion that Johnson was involved in this drug conversation." Appellant's Brief at 24. Johnson's only argument as to this alleged error, then, appears to be that the inconsistency between the recorded conversation and the PSR calls into question the reliability of the PSR as a whole. An isolated error that is not relied upon by the court, however, does not call into question the report in its entirety, particularly where the rest of the report did not rely on any recordings and Johnson makes no argument of any similar factual inaccuracies elsewhere.

Moreover, the lack of direct participation by Johnson in that portion of the conversation does not absolve him of any role as leader or organizer. Johnson cannot claim that he was uninvolved in that transaction, as his guilty plea acknowledges that he was the source of the drugs that were supplied to Enoch following that conversation, who then cooked it into crack cocaine to forward to Marshall. Statements by Marshall and Enoch indicated that Johnson was the one who supplied the drugs to be cooked into crack on that and other occasions and that he coordinated the deliveries to Marshall. That Johnson sought to limit his criminal exposure by not engaging in direct communications regarding the drug deals does not render

unreliable the statements of Enoch or Marshall, and in fact that is perfectly consistent with the position of a leader or supervisor. It is hardly unusual for a supervisor to limit his criminal exposure, and for the underlings to be more exposed in a drug conspiracy.

Johnson's objections ultimately hinge on his belief that the statements by Marshall and Enoch should not have been relied on by the district court because they were uncorroborated by recordings or other similar evidence, and that Marshall and Enoch had a motive to lie. That argument predominated in Johnson's brief and at the sentencing hearing, at which the lack of corroboration was repeatedly raised. But we rejected a similar argument in *United States v. Galbraith*, 200 F.3d 1006, 1012 (7th Cir. 2000). Galbraith complained in that case about the district court's decision to credit information provided by George Songer, a person who had been convicted of prior drug offenses and was facing possible drug charges himself, and who claimed to have knowledge of additional drug amounts involving Galbraith. In addition to questioning Songer's motives, Galbraith decried the lack of corroboration of Songer's testimony. We held in *Galbraith* that "these facts do not necessarily render him unreliable." *Id.* In fact, in *Galbraith* we upheld the district court's reliance on Songer's statements, even though we were disturbed by "the fact that Songer's two interviews yielded vastly different information." *Id.* We concluded that the district court did not err in crediting Songer's testimony as to 148 grams and discrediting other testimony as to a larger amount, because the testimony as to the 148 grams "bore indicia of reliability—facts and details—that were missing from the statement regarding the larger amount." *Id.* at 1013.

Johnson has far less indicia of unreliability than were present in *Galbraith*. There are no internal inconsistencies identified here, and we have squarely rejected

the notion that corroboration is required in order for a district court to find statements reliable. Instead, "the hallmark of reliability is consistency of facts and details. . . . We require only that the testimony be consistent, or that the trial judge provide an explanation for crediting one of the witness's inconsistent statements over the others." *Zehm*, 217 F.3d at 514; *Galbraith*, 200 F.3d at 1012. That standard is met here. The statements are consistent, and in fact are corroborated by the recordings and observed activities.

Johnson's remaining argument, that the district court failed to articulate fact findings underlying its § 3B1.1 enhancement and that the evidence was insufficient to support that enhancement, fares no better. Under the Commentary to § 3B1.1, in determining whether the enhancement applies,

> [f]actors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, Application Note 4. The district court identified each of those factors and found that the record supported the enhancement for each of them. Johnson nevertheless challenges those findings, asserting that the factual findings were not based on the record or on reliable evidence introduced at the sentencing hearing. This argument ultimately rests on the same challenge to the reliability of the statements by Marshall and Enoch, which we have already rejected. When those statements are considered, the record provides ample support for the district court's decision to apply the enhancement. Johnson

has failed to demonstrate that the district court committed clear error in applying the § 3B1.1(c) enhancement. The decision of the district court is AFFIRMED.

A true Copy:

      Teste:

                        _____
*Clerk of the United States Court of Appeals for the Seventh Circuit*

USCA-02-C-0072—6-4-07