NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued March 5, 2008
Decided May 9, 2008

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

DANIEL A. MANION, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 07-2985

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District Court for the Western District of Wisconsin. |
| *Plaintiff-Appellee,* | |
| *v.* | No. 06-CR-208-S |
| JAMES ALPHONSE, | John C. Shabaz, |
| *Defendant-Appellant.* | *Judge.* |

**O R D E R**

Throughout the summer of 2006, James Alphonse sold crack cocaine to an undercover police officer in Beloit, Wisconsin.  He eventually pleaded guilty to one count of possession of crack with intent to distribute.  *See* 21 U.S.C. § 841(a)(1).  Alphonse was sentenced at the middle of his guidelines range to 150 months' imprisonment.  He argues that the district court erred in imposing a two-level upward adjustment under U.S.S.G. § 3B1.1(c) for being a manager or supervisor of the offense.  We affirm Alphonse's sentence.

Alphonse was sentenced in August 2007.  The court attributed four sales of crack—totaling nearly 260 grams—to Alphonse for sentencing purposes.  The first sale was

arranged between Sean White, one of Alphonse's codefendants, and the undercover officer after the officer called Alphonse's cell phone and Alphonse handed the phone to White. The remaining three sales were arranged by Alphonse. White, however, made the first and fourth deliveries, and Tomshalynn Hardin, another codefendant, made the second and third. During the first delivery, when the officer asked to make a future purchase of an ounce of crack, White told the officer that he and his "partner" Alphonse could complete the sale and quoted the officer a price contingent upon him becoming a long-term customer. During the fourth delivery, when the officer asked White if he could purchase a pound of crack, this time White told him that a price would have to be "worked out."

A probation officer recommended a two-level upward adjustment under § 3B1.1(c) to Alphonse's base offense level for being a manager or supervisor of the offense, largely based on statements White made to the police after his arrest. Alphonse objected to the adjustment, asserting White had lied. White therefore testified at Alphonse's sentencing. According to his testimony and the statements he made to the police, the crack sold to the undercover officer on each occasion was Alphonse's and Alphonse directed its sale. White said that Alphonse kept the proceeds from the sales. White explained that he merely delivered the drugs to the undercover officer and in exchange Alphonse paid him with small quantities of crack, food, and a place to stay. (White was a crack addict at the time.) Lease records established that the residence the police understood to be both White's and Alphonse's was leased only to Alphonse and Hardin.

On cross-examination, defense counsel pointed out that it had been White who had arranged the first sale and emphasized that during the delivery, White had referred to Alphonse as his "partner" and quoted the officer a price for a future sale. White responded that when arranging the sale, he merely relayed Alphonse's terms to the officer. He explained that during the delivery, he said what he did just to get the officer to trust him and to believe that he could get the officer what he wanted. Defense counsel then tried to make much of the fact that White admitted to the police that he sold crack with other suppliers during this same time period. Counsel insisted White had lied during his grand jury testimony because he denied "selling" drugs during the summer of 2006. But counsel for the government pointed the court's attention to the remainder of White's grand jury testimony where he explicitly admitted to "distributing" crack on behalf of several sellers during that time period. White similarly explained at Alphonse's sentencing that he had maintained the same kind of arrangement with these other sellers as he had with Alphonse.

The sentencing judge credited White's account and applied the two-level upward adjustment under § 3B1.1(c), resulting in a guidelines imprisonment range of 135 to 168 months. The court sentenced Alphonse at the middle of the guidelines range to 150 months' imprisonment.

Alphonse argues that the district court erred in applying the upward adjustment under § 3B1.1(c). Review here is for clear error. *See United States v. Blaylock*, 413 F.3d 616, 618 (7th Cir. 2005). Alphonse does not dispute that White's account, if believed, establishes that Alphonse was the organizer and manager of the offense. *See* U.S.S.G. § 3B1.1 cmt. n.4 (explaining that relevant factors in deciding whether defendant was a manager or supervisor include degree of participation in planning the offense, degree of control exercised over others, and claimed right to larger share of fruits of the crime)*; United States v. Gracia*, 272 F.3d 866, 877 (7th Cir. 2001) (concluding that adjustment under § 3B1.1 was appropriate where, during money laundering conspiracy, defendant provided money to open accounts, drove other participants to and from bank, and kept larger share of proceeds). Instead, Alphonse's sole argument is that the district court's finding that he organized and managed the offense is clearly erroneous because White was an unreliable, self-interested witness seeking favorable treatment. Alphonse notes that White's testimony about their respective roles in the drug sales contradicted his recorded statements to the undercover officer during the first delivery, when he referred to Alphonse as his partner and quoted the officer a price for a future sale. Alphonse also emphasizes that White was "middling" drugs for other sellers in Beloit during the summer of 2006. Finally, Alphonse argues that White's general untrustworthiness is evidenced by his having denied "selling" drugs that summer during his grand jury testimony.

As the government's brief explains, Alphonse exaggerates the purported inconsistencies in White's testimony and mischaracterizes much of his account. White explained that during the first delivery, he was simply telling the officer what he thought a new and potential long-term customer needed to hear in order to gain his trust. When, at the final delivery, the officer inquired about purchasing an increased quantity of crack, White refused to quote him a price. And the fact that White was involved in crack sales for other sellers during the same time period says nothing about the nature of White's relationship with Alphonse. If anything, it bolsters White's explanation that at this time he was delivering drugs in exchange for small quantities because he was an addict. Lastly, while White denied to the grand jury "selling" drugs in the summer of 2006, he explicitly admitted to "distributing" drugs for several people during that time. This too is wholly consistent with his testimony at Alphonse's sentencing.

In any event, these are not sufficient reasons to disrupt the sentencing judge's decision to credit White. We have explained repeatedly that a sentencing judge may choose to credit a potentially biased witness, including a government informant, and that such a witness's testimony can support a finding of fact. *See United States v. Johnson*, 489 F.3d 794, 797 (7th Cir. 2007) (concluding that sentencing judge was free to find that defendant merited adjustment for managing and supervising conspiracy based on testimony of self-interested coconspirator); *United States v. Romero*, 469 F.3d 1139, 1147 (7th Cir. 2006); *United States v. Galbraith*, 200 F.3d 1006, 1012 (7th Cir. 2000). The information considered by a sentencing

judge need only have "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a); *see United States v. Artley,* 489 F.3d 813, 821 (7th Cir. 2007); *United States v. Roche,* 415 F.3d 614, 618 (7th Cir. 2005).  That requirement was satisfied here: White was cross-examined forcefully, and several uncontested facts in the record comported with his testimony, including that for three out of the four sales (the ones for the largest quantities) Alphonse negotiated the terms directly with the undercover officer, but White or Hardin made the deliveries, and that the apartment where White was staying was leased to Alphonse.

For the foregoing reasons, we AFFIRM Alphonse's sentence.