NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 12, 2012
Decided July 9, 2012

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 11-2538

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 1:09-cr-00764-1 |
| FERNANDO DELGADO-CORTES, | |
| *Defendant-Appellant*. | Matthew F. Kennelly, *Judge*. |

**O R D E R**

In this direct criminal appeal, Fernando Delgado-Cortes ("Delgado") challenges the district court's conclusion that he was responsible for conspiring to distribute nine kilograms of cocaine. He admits that he and his coconspirators attempted to sell three kilograms of cocaine to a government informant, but insists that the government did not meet its burden to prove by a preponderance of evidence that he was also responsible for six kilograms of cocaine found in a vehicle owned by a coconspirator. Because the district court's conclusion was not clearly erroneous, we affirm.

In September 2009, a government informant told Delgado that he would like to purchase three kilograms of cocaine. Delgado told the informant that he was expecting a shipment soon and negotiated a price. The shipment arrived, Delgado notified the informant, and they agreed to carry out the transaction in the back room of a tire shop owned by Delgado's employer, Jesus

Sanchez-Cebrero ("Sanchez").  Both Sanchez and another coconspirator, Gregorio Soberanis-Campos ("Soberanis"), were present for the transaction.  A package containing about three kilograms of cocaine was handed over to the informant and cut open to prove its purity.  The informant used his cell phone to signal government agents and then left the scene.

Around the time they received the informant's signal, government agents—who had been monitoring the tire shop during the transaction—saw a Ford Explorer drive into a service bay. They watched an unidentified man exit the Explorer, and then they raided the shop, arresting Sanchez, Delgado, and Soberanis.  The agents found the three kilograms in the back room, and with a canine search, discovered more drugs hidden in the Explorer.  The canine search also led to the discovery of packages in Sanchez's Toyota Tacoma that contained six more kilograms of cocaine; one of the packages was later found to bear Sanchez's fingerprint.

After receiving *Miranda* warnings, Sanchez agreed to talk with government agents and admitted to permitting Delgado and Soberanis to conduct the three-kilogram transaction in his shop.  He attributed the six kilograms in his Tacoma to Delgado, though he conceded that he gave Delgado permission to store the cocaine there.  The drugs in the Explorer, he added, came from someone called "El Licensiado."  He acknowledged knowing they were in the vehicle and receiving $5,000 for keeping the Explorer at his shop.

Delgado pleaded guilty (along with Sanchez and Soberanis) to conspiracy to possess cocaine with intent to distribute.  *See* 21 U.S.C. §§ 846, 841(a)(1).  In a presentence investigation report, a probation officer, citing the need to "err on the side of caution," sided with Delgado and downplayed as circumstantial the evidence of his connection to the drugs in the Tacoma. The probation officer calculated a Guidelines range based solely on the three kilograms that Delgado attempted to sell to the informant: this quantity corresponded to an offense level of 25, which, combined with Delgado's criminal-history score of I, to yield a range of 57 to 71 months; however, the large quantity triggered a five-year statutory minimum, *see* 21 U.S.C. § 841(b)(1)(ii)(II), which revised the range to 60 to 71 months, *see* U.S.S.G. § 5G1.1(c)(2).

The government objected to the probation officer's recommendation that Delgado be sentenced based solely on the three kilograms.  It stressed Sanchez's statement that the drugs in the Tacoma belonged to Delgado and noted that the statement's reliability was bolstered by its being made against Sanchez's penal interest.  The government also argued that Delgado's initial conversation with the informant—which had been recorded by agents—suggested both an ongoing relationship with a larger drug distributor and a history of drug dealing in kilogram quantities that corroborated Sanchez's identifying Delgado as the source of the six kilograms in the Tacoma.

At sentencing the district court accepted the government's position and held Delgado responsible for the six kilograms in the Tacoma. This quantity (being greater than five kilograms) triggered a ten-year statutory minimum, *see* 21 U.S.C. § 841(b)(1)(A)(ii)(II), which the court imposed. The court explained that it believed Sanchez's account (noting, among other things that Sanchez could just have easily minimized responsibility by shifting blame to El Licensiado or some other anonymous person instead of Delgado, his employee), and found Sanchez's account otherwise corroborated by the government's recordings of Delgado's initial conversations with the informant.

We review a sentencing judge's findings regarding drug quantities for clear error. *United States v. Barnes*, 602 F.3d 790, 794 (7th Cir. 2010). A sentence will be vacated only if, "after reviewing the entire record, we are left with the firm and definite conviction that a mistake has been made." *United States v. Johnson*, 643 F.3d 545, 551 (7th Cir. 2011) (quoting *United States v. Cross*, 430 F.3d 406, 410 (7th Cir. 2005)).

Delgado first argues that the sentencing judge clearly erred when he relied on Sanchez's statement, despite having concerns about Sanchez's credibility. Delgado points to the judge's acknowledgment that Sanchez might have been motivated to "shift" blame to others. In Delgado's view, the judge's decision to base his finding on such an unreliable source of information violates due process. *See United States v. England*, 555 F.3d 616, 622 (7th Cir. 2009).

But even if a witness is less than fully credible, a court may rely on such testimony so long as it bears "sufficient indicia of reliability to support its probable accuracy," *United States v. Johnson*, 489 F.3d 794, 797–98 (7th Cir. 2007) (quoting *United States v. Roche*, 415 F.3d 614, 618 (7th Cir. 2005)), particularly when this testimony is consistent with other facts in the record–which Sanchez's statement was. "[T]he hallmark of reliability is consistency of facts and details." *United States v. Zehm*, 217 F.3d 506, 514 (7th Cir. 2000). Merely having an incentive to lie—the lone doubt Delgado casts upon Sanchez's credibility—does not preclude a court from believing a witness's testimony; "even the testimony of a potentially biased witness is sufficient to support a finding of fact." *Johnson*, 489 F.3d at 797); *see, e.g.*, *Cross*, 430 F.3d at 410–11 (relying on testimony of drug addict with criminal record); *United States v. Galbraith*, 200 F.3d 1006, 1012–13 (7th Cir. 2000) (relying on drug addict's inconsistent testimony).

Delgado next appears to argue that the district court committed clear error by not requiring corroboration of Sanchez's charge that the drugs in the Tacoma belonged to him. But a lack of corroboration does not prevent a judge from relying on a witness's statements. *Johnson*, 489 F.3d at 798; *Galbraith*, 200 F.3d at 1012. In any event, the judge did not err in finding that Sanchez's account was corroborated by government recordings suggesting that Delgado had both a relationship with a larger drug distributor and a history of drug dealing in kilogram quantities.

Finally Delgado hints at two arguments that are undeveloped. First, he insists that the judge's reasoning for crediting Sanchez's testimony relied on speculation, and therefore did not satisfy due process. But Delgado's argument is conclusory, and he makes no attempt to explain what was impermissibly speculative about the judge's reasoning. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012). Second, he asserts that the sentencing judge ignored the evidence regarding Sanchez's fingerprint. At best, the fingerprint is of marginal significance: Sanchez admitted that he was involved with the six kilograms in the Tacoma, and that he touched one of the packages at some point does not disprove Delgado's ownership.

AFFIRMED.