In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-3304

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

EDWARD GIBBS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Evansville Division.
No. 3:18-cr-00047-RLY-MPB-2 — **Richard L. Young**, *Judge.*

ARGUED OCTOBER 1, 2021 — DECIDED FEBRUARY 22, 2022

Before EASTERBROOK, MANION, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* This appeal concerns the sentence
Edward Gibbs must serve for participating in a conspiracy to
obtain and distribute methamphetamine. Although
sentencing proceedings are more informal than trials, that
does not mean that they are a free-for-all. Federal Rule of
Criminal Procedure 32 provides a detailed map for sentencing
and judgment. Its requirements, we conclude, were not
followed here, and so Gibbs wound up being held responsible

for far more methamphetamine than the record supported. We reverse and remand for resentencing.

**I**

In March 2018, Gibbs was pulled over for a traffic violation. When the police searched his truck, they discovered three bags of methamphetamine weighing about 839 grams, along with more than $10,000 in cash, numerous cell phones, and drug paraphernalia. They immediately arrested both Gibbs and his wife Jennifer Gibbs, who was a passenger in the car.

While in jail, Gibbs contacted a drug supplier named Hernany Quintana and coordinated two potential drug transactions to raise money for bond. In the first, an acquaintance named Robert Waters was supposed to obtain two pounds (.907 kilograms) of methamphetamine from Quintana and sell it on Gibbs's behalf. In the second, Gibbs's son and a man by the name of Donald Hemmings were supposed to obtain and sell another .907 kilos from Quintana, again on Gibbs's instructions. Neither of the schemes came to fruition.

Gibbs was initially charged in state court for his meth dealings, but in August 2018, Gibbs, Quintana, Waters, Hemmings, Gibbs's wife, and Gibbs's son were all indicted on one count of conspiring to possess methamphetamine with the intent to distribute it, in violation of 21 U.S.C §§ 841(a)(1), (b)(1)(A), 846. The indictment alleged only that the conspiracy involved "500 grams or more of a substance" containing methamphetamine.

After two years in pretrial detention, Gibbs pleaded guilty to the conspiracy charge. At the guilty plea hearing, the Assistant U.S. Attorney (AUSA) provided a factual basis for the

indictment. In the course of doing so, the AUSA asserted for the first time that the conspirators had distributed more than 4.5 kilograms of methamphetamine during the charged period. Gibbs refused to agree to that portion of the AUSA's account; in his plea, he admitted only his role with respect to the 500-gram quantity alleged in the indictment.

Following the court's acceptance of the guilty plea, the U.S. Probation office prepared a Presentence Investigation Report (PSR). FED. R. CRIM. P. 32(c)(1)(A). The PSR described Gibbs's offense conduct, listing the .839 kilograms of meth seized from his car, the .907-kilogram deal Gibbs tried to arrange with Waters, and the .907-kilogram deal that Gibbs tried to arrange for Hemmings and his son. The PSR also stated, without any explanation, that "at least between October 1, 2017, and August 28, 2018, Quintana distributed over 4.5 kilograms of methamphetamine ice" to members of the charged conspiracy. To state the obvious, those numbers did not add up: .907 kilograms plus .907 kilograms plus .839 kilograms equals 2.653 kilograms, not 4.5 kilograms.

Based on the assumption that the conspiracy involved 4.5 kilograms or more of methamphetamine, and that the drug was in the dangerously pure "ice" form, the PSR calculated a base offense level of 38. U.S.S.G. § 2D1.1(c)(1). After enhancements and reductions not challenged here, the court ultimately arrived at a total offense level of 37. Given Gibbs's criminal history category of II, this yielded an advisory guidelines range of 235–293 months. If Gibbs had been sentenced for a conspiracy involving 2.5 kilograms of ice, his unadjusted offense level would have been 36, U.S.S.G. § 2D1.1(c)(2), his final level 35, and his guidelines range 188–235 months.

Gibbs objected to the PSR's use of the alleged 4.5 kilos in the computation of his base offense level, but the AUSA did not respond with any evidence. In the final PSR, the probation officer provided only a one-sentence response to Gibbs's objection: "Information pertaining to the facts of the case was provided by the government; therefore, there is no response required by the probation officer." The only problem was that there was no such information in the PSR or elsewhere in the record.

The first time the AUSA attempted to provide a basis for the assertion that Gibbs had conspired to distribute 4.5 kilograms of meth "ice" (also called crystal meth) was at Gibbs's sentencing hearing. There the AUSA blindsided the defense with new and unsubstantiated allegations. The AUSA told the district court that Gibbs had admitted to receiving more than 36 pounds (roughly 16 kilos) of meth from Quintana during an unrecorded proffer session in July 2019. This was the first time in the two-and-a-half-year history of the case that the government asserted that Gibbs had confessed. The AUSA then added that Quintana had also provided a proffer statement, in which "he" stated that over the course of the conspiracy "he made at least 15 trips, receiving approximately 3 pounds of crystal methamphetamine for each trip." Once again, this was brand new information. It is unclear from the transcript whether the "he" to which the AUSA referred was Gibbs or Quintana. Finally, the government alleged that during the proffer sessions both Gibbs and Quintana had admitted that Quintana gave Gibbs an additional 20 pounds of meth that "went bad" in Gibbs's back yard.

Taken by surprise, Gibbs's counsel objected. Counsel explained that he had been present at the July 2019 proffer

session and that, while the session was not transcribed, he did not remember Gibbs making the alleged confession. Pressed by the judge, Gibbs's counsel insisted that he could not remember the alleged statements and assured the court that he "would remember [his] client admitting to those huge quantities before submitting a sentencing memorandum contradicting that[.]"

Unlike Gibbs's counsel, the AUSA had not been personally present at Gibbs's proffer session. She told the court that in preparation for the case she had spoken to the prosecutor from whom she had inherited the case, and she had received notes from a law enforcement officer who was present at Gibbs's unrecorded proffer. Neither of those was called to testify, and the AUSA did not provide the notes she had reviewed to the defense or the court.

The district court overruled Gibbs's objections to the drug quantity. It offered three reasons for this decision. First, it accepted the AUSA's representations as evidence that Gibbs received 36 pounds of crystal meth for distribution. Second, it noted that Gibbs's co-defendants had pleaded guilty to a conspiracy involving 4.5 kilograms or more of meth. Third, the judge attributed to Gibbs a statement to the effect that he had made 15 trips to Kansas and picked up three pounds (1.4 kilograms) of crystal meth each time, when that statement may have been made by Quintana. The court declined, however, to take into account the 20 pounds of meth that Gibbs allegedly had buried in his backyard.

Relying on its finding that Gibbs was involved in a conspiracy to distribute more than 4.5 kilograms of drugs, the district court proceeded to sentence him. As we noted earlier, his final offense level was 37, and he was in Criminal History

category II. After taking into account the considerations out-lined in 18 U.S.C. § 3553(a)—especially the fact that Gibbs was almost 60 years old—the court sentenced him to prison for 200 months.

## II

We review a district court's factual findings about un-charged drug quantity for clear error. *United States v. Freeman*, 815 F.3d 347, 353 (7th Cir. 2016). We take a fresh look at whether a district court followed proper procedures. *United States v. Pulley*, 601 F.3d 660, 664 (7th Cir. 2010).

## A

Uncharged drug quantities that "foreseeably fall[] within the scope of jointly undertaken criminal activity" may be considered in assessing a defendant's relevant conduct and sentence. *United States v. Bautista*, 532 F.3d 667, 672 (7th Cir. 2008). But criminal defendants have a right to be sentenced on the basis of accurate information. The government bears the burden of proving by a preponderance of the evidence that uncharged drug quantities are attributable to a defendant. See *United States v. Helding*, 948 F.3d 864, 870 (7th Cir. 2020); *United States v. Longstreet*, 567 F.3d 911, 923–24 (7th Cir. 2009). While district courts may consider evidence that would not be admissible at trial, *United States v. Clark*, 538 F.3d 803, 812 (7th Cir. 2008), that information nonetheless must be well-supported and reliable, *United States v. Johnson*, 489 F.3d 794, 797 (7th Cir. 2007). These principles are reflected and implemented in Federal Rule of Criminal Procedure 32.

Rule 32 establishes a burden-shifting framework for the development of the factual and legal issues relevant at sentencing. At the outset, the prosecution has the burden to

prove any drug quantity associated with uncharged conduct. *United States v. Noble*, 367 F.3d 681, 682 (7th Cir. 2004). In preparation for sentencing, Rule 32 instructs the U.S. Probation Office to prepare a PSR that calculates the defendant's offense level. FED. R. CRIM. P. 32(c), (d)(1)(B); but see FED. R. CRIM. P. 32(c)(1)(A)(i), (ii) (establishing limited exceptions not relevant here). A sentencing judge may "rely on a presentence report if it 'is well-supported and appears reliable.'" *United States v. Marks*, 864 F.3d 575, 580 (7th Cir. 2017). If a PSR meets those criteria, the burden shifts to the defendant to "com[e] forward with facts demonstrating that the information in the PSR is inaccurate or unreliable." *Helding*, 948 F.3d at 870.

Rule 32 also establishes a process through which a criminal defendant may review the PSR and object to any inaccurate information. FED. R. CRIM. P. 32(e), (f). Generally, a "'bare denial' is not enough" to shift the burden back to the prosecution to prove that the PSR's account is accurate. *United States v. Moreno-Padilla*, 602 F.3d 802, 809 (7th Cir. 2010). Before that shift occurs, the defendant must produce evidence that "creates real doubt" about the allegations in the PSR. *Id.*

But this all assumes that the PSR has a solid basis. There are several well-established exceptions that apply when a PSR lacks key indicia of reliability. If a PSR "asserts 'nothing but a naked or unsupported charge,'" then a defendant's denial is enough to "cast doubts on its accuracy." *Helding*, 948 F.3d at 870 (citing *Marks*, 864 F.3d at 580). Similarly, if the PSR "omits crucial information," then the defendant's denial alone can shift the burden of proof back to the prosecution. See *id.*; *Moreno-Padilla*, 602 F.3d at 809. The district court may accept an undisputed portion of a presentence report as fact. FED. R.

CRIM. P. 32(i)(3)(A). But if any portion of the PSR is disputed and relevant to sentencing, the court "must … rule on the dispute[.]" FED. R. CRIM. P. 32(i)(3)(B); see also *Helding*, 948 F.3d at 870 ("[W]here a district court relies on evidence that substantially increases drug quantity, it must take care in determining the accuracy of that evidence.")

In this case, the PSR and the district court's use of it did not meet Rule 32's requirements. As we just said, when "contested facts are material to the judge's sentencing decision," the rule requires the judge to make factual findings based on evidence. *United States v. Dean*, 414 F.3d 725, 730 (7th Cir. 2005). To make those findings, the judge must determine whether the facts on which the prosecution relies are true. See *id.* at 727. Here, the district court did not have any evidence backing up the AUSA's eleventh-hour representations about what the evidence would show, and so nothing was available to resolve the dispute about drug quantity.

Without substantiation for the AUSA's statements, the government failed to meet its burden to prove the uncharged conduct by a preponderance of the evidence. Because the PSR charged Gibbs with an unsupported drug quantity, Gibbs's denial was enough to shift the burden of proof back to the prosecution. See *Helding*, 948 F.3d at 870. At sentencing, the AUSA represented that the prosecution could call as a witness an official who was present for Gibbs's alleged confession and who had kept notes supporting the uncharged drug quantity. But that official was never produced. Thus, in the end the only thing in the record was counsel's statement. That falls short of proof.

The government relies on this court's decision in *United States v. Agyemang* to argue that a sentencing judge is under

no obligation to "hold an elaborate trial-type proceeding" before considering evidence of uncharged conduct at sentencing, even when that evidence is hearsay. 876 F.2d 1264, 1272 (7th Cir. 1989). That much is true. But here, the problem is not that the district court relied on a witness who recited an out-of-court statement. It is that there was no such witness who supported the quantity for which the government was arguing. This is a far cry from *Agyemang*, in which the government produced several witnesses who were all "vigorously cross-examined" at sentencing by the defendant, and the court permitted the parties to present dueling experts. *Id*. at 1268–69. Moreover, the government has side-stepped the requirements of Rule 32(i)(2) in its effort to use the AUSA's representation that Gibbs confessed during the proffer session as a substitute for calling the official who was present at the proffer session and obtaining that person's testimony. See FED. R. CRIM. P. 32(i)(2) (establishing procedural safeguards when a witness testifies at sentencing).

Finally, the government reminds us that we can "affirm on any ground in the record," *United States v. Harden*, 893 F.3d 434, 451 (7th Cir. 2018), and urges us to affirm on the basis that Gibbs's co-defendant Hemmings pleaded guilty to being part of a conspiracy to distribute over 4.5 kilograms of methamphetamine. But this is a bridge too far. The record lacks any evidence to connect the scope of Gibbs's business with that of Hemmings. A co-conspirator's guilty plea, without more, is not enough to support an uncharged drug quantity.

B

The government finally argues that even if the district court did not abide by Rule 32's prescriptions, its error was harmless. *Cf. United States v. Shelton*, 905 F.3d 1026, 1031 (7th

Cir. 2018) ("[E]rrors in calculating the advisory guideline range are subject to harmless error analysis."). We do not see it that way. As we have noted, it was error to accept the government's representations as proof and begin with an adjusted offense level of 37 and a guidelines range of 235 to 293 months. That was the backdrop for the court's consideration of the section 3353(a) factors and its choice of a below-guidelines term of 200 months. If Gibbs's final offense level is reduced from 37 to 35 and all else remains equal, the applicable guidelines range would be 188 to 235 months. The government argues that because Gibbs's sentence landed within that revised range, the court may impose the same sentence on remand.

That is certainly possible. But this is not a case in which we are "convinced" that a remand "would result in the same sentence." *United States v. Melvin*, 948 F.3d 848, 854 (7th Cir. 2020). As the Supreme Court recently stressed, "[w]hen a defendant is sentenced under an incorrect Guidelines range—*whether or not the defendant's ultimate sentence falls within the correct range*—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez v. United States*, 578 U.S. 189, 198 (2016) (in a case reviewed for plain error) (emphasis added). Here, the district court used the sentencing range as an anchor point, and so the guidelines are the foundation of the sentence. See *Peugh v. United States*, 569 U.S. 530, 542 (2013) (when judges start with a sentencing range and "explain the decision to deviate from it, *then the Guidelines are in a real sense the basis for the sentence*.") (emphasis in original). Moreover, the district court did not provide any "firm assurances" that it would have imposed the same sentence with a lower recommended guidelines range. *United States v. Hines-Flagg*, 789 F.3d 751,

757 (7th Cir. 2015). The government has thus failed to carry its burden to show that the guidelines error "did not affect the district court's selection of the sentence imposed." See *United States v. Abbas*, 560 F.3d 660, 667 (7th Cir. 2009).

### III

When the government fails to meet its burden to support uncharged drug quantities, "the government is not permitted on remand to try again and submit new evidence in a belated effort to carry its burden." *Noble*, 367 F.3d at 682. The government is entitled to only one chance to present this evidence. In this case, the government did not simply fail to present sufficient evidence; it failed to provide any evidence at all of the higher drug quantity. Gibbs is entitled to be resentenced using offense level 35 and Criminal History category II.

The judgment is VACATED and the case REMANDED for resentencing consistent with this opinion.