In the

# United States Court of Appeals
## For the Seventh Circuit

No. 24-2735

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MALAIA A. TURNER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 22-CR-20051 — **Colin S. Bruce**, *Chief Judge.*

ARGUED APRIL 14, 2026 — DECIDED JUNE 29, 2026

Before HAMILTON, KIRSCH, and KOLAR, *Circuit Judges.*

KIRSCH, *Circuit Judge.* A jury convicted Malaia Turner of
conspiring to distribute methamphetamine, and the district
court sentenced her to 324 months' imprisonment. On appeal,
Turner challenges the district court's application of a two-
level leader-organizer enhancement pursuant to the United
States Sentencing Guidelines § 3B1.1(c). Turner also asserts
that the district court committed a procedural error when it
accepted the probation officer's calculation of the drug

quantities attributable to her. The enhancement was properly applied, the district court did not err regarding the drug calculation, and so we affirm.

I

A grand jury indicted Malaia Turner with conspiring to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846 & 841(a)(1), (b)(1)(A). Turner was convicted following a jury trial.

At trial, the government proved that Turner and her coconspirators were involved in a methamphetamine transportation and distribution scheme. Beginning in 2019, Turner and Marcus Posey began purchasing methamphetamine from Turner's brother, and the pair later began purchasing methamphetamine in California for distribution in Illinois. Turner and Marcus made multiple trips to California, with Turner at times booking flights and driving them to purchase methamphetamine. At trial, Marcus testified that both he and Turner packed and shipped methamphetamine to a home near Turner's mother's former house in Illinois. And a postal inspector testified that packages were mailed to the Illinois address with weights that were approximately the same as Marcus's estimates.

Over time, the pair expanded their operations. They employed Marcus's cousin, Patrick Posey, as a courier to transport methamphetamine to Illinois, with Turner and Marcus splitting the costs of payments to Patrick. Turner and Marcus also involved Ronald Lemons in the scheme and negotiated deals for methamphetamine on his behalf. While Marcus initially kept more of the profits from methamphetamine sales, Marcus and Turner eventually split the proceeds.

Turner and Marcus also consulted with one another regarding methamphetamine prices, and Turner contacted customers to enforce payment. On occasion, she handled transactions by herself. Indeed, Turner was responsible for a transaction involving a large quantity of methamphetamine in California. A few of the co-conspirators also engaged in transactions involving other drugs, including cocaine and marijuana.

Prior to sentencing, a probation officer prepared a Presentence Investigation Report (PSR) and recommended that the district court impose a two-level enhancement for Turner's leadership role in the conspiracy under U.S.S.G. § 3B1.1(c). The probation officer attributed to Turner about 250 kilograms of methamphetamine, six kilograms of cocaine, and roughly 113 kilograms of marijuana. In a sentencing memorandum, Turner objected broadly to paragraphs in the PSR listing the drug amounts attributed to her and to the two-level role enhancement.

At sentencing, with one exception not at issue here, the district court adopted all the probation officer's factual findings and overruled Turner's objections with respect to the role enhancement and various drug quantities in the PSR. At the hearing, Turner didn't raise all the objections to the drug quantity calculations that she had previously raised in writing. But when asked by the district court whether it had addressed all of Turner's objections, Turner's counsel responded: "I believe so."

The district court concluded that Turner's total offense level was 40 and that her Criminal History Category was II, resulting in a Guidelines range of 324 to 405 months in prison. The court sentenced Turner to 324 months and noted that, "even if I erred in some way in the calculation of the

applicable guidelines … I would still impose the same sentence." Turner appealed.

## II

Turner argues that the district court erred at sentencing in two ways. First, she contends that the record doesn't support the application of the two-level leader-organizer enhancement. Second, she argues that the district court erred when it determined the quantity of drugs attributable to her.

## A

United States Sentencing Guidelines § 3B1.1(c) provides for a two-level increase in the defendant's offense level "[i]f the defendant was an organizer, leader, manager, or supervisor" in criminal activity involving fewer than five participants. For the enhancement to apply, the district court need only find that the defendant directed at least one other person in the criminal scheme. *United States v. Beechler*, 68 F.4th 358, 369 (7th Cir. 2023). The Application Notes to the Sentencing Guidelines provide a list of factors relevant to the application of the enhancement, including: the exercise of decision-making authority; the nature of the defendant's participation in the offense; the recruitment of accomplices; any claim to a larger share of the criminal proceeds; the degree of participation in planning or organizing the offense; the nature and scope of the criminal activity; and the extent of control and authority exercised over others. § 3B1.1 n.4. No one factor is required for the enhancement to apply, *United States v. Barnes*, 141 F.4th 882, 888 (7th Cir. 2025), and sentencing courts should make a "commonsense judgment about the defendant's relative culpability given [her] status in the criminal hierarchy," *United States v. Craft*, 99 F.4th 407, 414 (7th Cir. 2024);

*Barnes*, 141 F.4th at 888 ("It may be sufficient if the defendant was orchestrating or coordinating activities performed by others, or delegating tasks such as delivery or payment.") (citation modified). We review the district court's findings of fact for clear error, and we review de novo whether those facts support the application of the role enhancement. *United States v. Jones*, 56 F.4th 455, 493 (7th Cir. 2022).

There is ample evidence to support the district court's application of the role enhancement. At sentencing, the district court noted that the evidence at trial demonstrated that Turner was "definitely involved in supervising" Patrick and Lemons and that the record could have even supported a three-level enhancement. Indeed, Turner was integral to the drug operation: she recruited suppliers, organized some transportation to pick up drugs, helped mail drugs from California to Illinois, and handled a large methamphetamine purchase herself. Turner and Marcus consulted with each other regarding drug prices, and there was evidence that Turner reached out to customers to enforce payment. Trial testimony also indicated that Turner played a "leadership role on at least one occasion" when she and Marcus directed Patrick to transport drugs from California. *Beechler*, 68 F.4th at 369 (citation modified). Based on the uncontested portions of the PSR and the evidence at trial, the court reasonably found that there was a hierarchy among the co-conspirators, with Turner and Marcus higher up in the conspiracy and responsible for directing others. See *Barnes*, 141 F.4th at 888.

Turner attempts to argue that Marcus was the leader of the conspiracy, not her. But that doesn't matter. "There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." § 3B1.1 n.4;

*United States v. Pugh*, 147 F.4th 801, 808 (7th Cir. 2025) (holding that a district court didn't err in applying the enhancement despite a defendant's argument that a co-conspirator was also a leader in the enterprise). Regardless, there was evidence that Turner and Marcus were at least equals. And while Marcus initially retained more of the profits from the drug sales, Turner and Marcus eventually split them. We have no trouble concluding that the district court did not err in applying this enhancement.

B

The district court adopted the factual findings in the PSR, including the drug quantities attributable to Turner. On appeal, Turner argues that this was an error that improperly increased her Guidelines range.

A defendant has a due process right to be sentenced based on accurate information, and district courts must "make a specific finding of drug quantity and state the basis for that finding" to ensure that drug quantities are accurate. *United States v. Mustread*, 42 F.3d 1097, 1101 (7th Cir. 1994). We review a district court's factual findings for clear error. *United States v. Longstreet*, 567 F.3d 911, 924 (7th Cir. 2009).

At sentencing, the government has the burden of proving the quantity of drugs attributable to the defendant by a preponderance of the evidence. *Id.* at 923–24. A defendant involved in a drug conspiracy is "responsible not only for drug quantities directly attributable to [her] but also for amounts involved in transactions by coconspirators that were reasonably foreseeable to [her]." *Jones*, 56 F.4th at 506 (citation modified).

1

At the sentencing hearing, the district court discussed Turner's objections to: paragraph 13 of the PSR, which states that Turner was responsible for 9.18 kilograms of methamphetamine that was shipped from California to Illinois in the summer of 2020; paragraphs 18 and 19, which attributed to Turner drug quantities (including cocaine and marijuana) from multiple trips to California; and to paragraph 27, which stated the total drug weight attributable to Turner. But Turner fails to identify how any error in these paragraphs would change her offense level. That the district court didn't pay much attention to Turner's arguments on these paragraphs makes sense—they didn't matter. Even if the district court were to have set aside the drug quantities as stated in paragraphs 18 and 19 (and adjusted the total amount in paragraph 27 accordingly), Turner's offense level before the role enhancement is applied would still have been 38. See *id.* at 510 (finding a district court's procedural error in calculating drug quantity to be harmless where "there would have been no bottom-line effect on the guideline recommendation" even if the amounts attributed to the defendant were removed from the calculation). A base offense level of 38 required a converted drug weight of at least 90,000 kilograms or more. § 2D1.1(a)(5), (c). As illustrated by the government's helpful chart in its brief, even if the district court were to have granted the objections regarding these paragraphs, Turner would still have been responsible for a converted drug weight well over 90,000 kilograms. Indeed, Turner would have been responsible for at least 127,008 kilograms of total converted drug weight even without the drug weights in the contested paragraphs. And the district court explicitly stated that it would have imposed the same sentence even if it had sustained

Turner's objections. Thus, even if the district court erred by failing to make specific findings regarding the drug quantities detailed in paragraphs 13, 18, and 19, any error was harmless.

2

Turner also objects to the district court's adoption of the drug calculations listed in paragraphs 11, 16, and 17 of the PSR, but she has waived these objections. Although Turner had objected generally before sentencing to these paragraphs, Turner's counsel did not raise these objections again at the sentencing hearing. The district court accepted all the facts asserted in these paragraphs of the PSR, without specifically addressing Turner's written objections. And when the district court asked whether it had addressed all of Turner's objections, Turner's counsel responded: "I believe so." By her response to the court's question and failure to reiterate her objections at the hearing, Turner waived arguments with respect to these parts of the PSR. The record indicates a deliberate choice at sentencing not to object; Turner objected to other portions of the PSR (including other drug calculations), and defense counsel stated that Turner had no further objections. See *United States v. Garcia*, 580 F.3d 528, 542 (7th Cir. 2009) (holding that a defendant waived objections to a PSR where he "had access to the PSR, knew of his right to object, considered objecting to portions of the PSR other than the one he now challenges, and stated on the record that he did not have any further objections when asked by the district court"). Since Turner failed to raise these arguments before the district court, she may not now bring them on appeal.

Even if we were to ignore this instance of waiver, Turner still cannot succeed in showing error. Turner argues that the district court was obligated to address her written objections

to these paragraphs pursuant to Federal Rule of Criminal Procedure 32 and thus committed procedural error. Rule 32 provides for a burden-shifting framework at sentencing, requiring the government to prove any drug quantity associated with uncharged conduct. *United States v. Gibbs*, 26 F.4th 760, 765 (7th Cir. 2022). The government may rely on the PSR for this purpose, and the district court can rely on the PSR during sentencing so long as "it is well-supported and appears reliable." *Id.* (citation modified). Where the government meets its burden, the defendant then must put forward facts to demonstrate that "the information in the PSR is inaccurate or unreliable." *Id.* (citation modified). A district court may "pass over in silence frivolous arguments for leniency, but where a defendant presents an argument that is not so weak as not to merit discussion, a court is required to explain its reason for rejecting that argument." *Jones*, 56 F.4th at 510 (citation modified). Turner only presented her objections to the relevant paragraphs in a cursory manner prior to sentencing. The district court was permitted to pass over these underdeveloped and unraised arguments at sentencing.

AFFIRMED